1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6          SAN JOSE DIVISION

7

8    MAHNUSH MOVAHEDI,                         Case No.   5:25-cv-05503-EJD

9              Plaintiff,                       **ORDER GRANTING IN PART AND
                                                DENYING IN PART MOTIONS TO**
10        v.                                    **DISMISS WITH LEAVE TO AMEND**

11   DFINITY USA RESEARCH LLC, et al.,
                                                Re: Dkt. Nos. 24, 25, 26
12             Defendants.

13        Plaintiff Mahnush Movahedi ("Plaintiff") brings various California state claims against

14   Defendants Dfinity USA Research, LLC ("Dfinity USA"), Dfinity Stiftung ("Dfinity

15   Switzerland"), and Dominic Williams (collectively, "Defendants"), alleging that Defendants failed

16   to timely release her vested cryptocurrency.  Compl., ECF No. 1-1.  Before the Court are

17   Defendants' three motions to dismiss.  Dfinity USA Mot., ECF No. 25; Dfinity Switzerland Mot.,

18   ECF No. 24; Williams Mot., ECF No. 26.  These motions are fully briefed.  Opp'n to Dfinity USA

19   Mot., ECF No. 31; Reply to Dfinity USA Mot., ECF No. 35; Opp'n to Dfinity Switzerland Mot.,

20   ECF No. 33; Reply to Dfinity Switzerland Mot., ECF No. 36; Opp'n to Williams Mot., ECF No.

21   32; Reply to Williams Mot., ECF No. 37.

22        After careful review of the relevant documents, the Court finds this matter suitable for

23   decision without oral argument pursuant to Local Rule 7-1(b).  For the reasons explained below,

24   the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss with

25   leave to amend.

26   **I.    BACKGROUND**

27        Plaintiff is suing Defendants for their failure to release her vested cryptocurrency in a

28   Case No.: 5:25-cv-05503-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
                                          1

United States District Court
Northern District of California

1    timely manner, which she alleges deprived her of the ability to sell her tokens before their value

2    decreased substantially.  There are three Defendants: Dfinity USA, Dfinity Switzerland, and

3    Williams.  Dfinity USA is an LLC operating out of San Francisco that develops network protocols

4    and cryptography for the Internet Computer ("ICP"), which is a set of protocols for independent

5    data centers to offer a decentralized Internet as an alternative to cloud services.  Compl. ¶¶ 3, 8.

6    Dfinity USA has one sole member, Dfinity Switzerland.  *Id.* ¶ 3.  Dfinity Switzerland is a non-

7    profit organization based in Zurich, Switzerland with operations also in San Francisco.  *Id.*

8    Williams is the President and Council Member of Dfinity Switzerland and the Chief Executive

9    Officer of Dfinity USA.  *Id.* ¶ 4.  Williams resided in Santa Clara County and Plaintiff resided in

10    San Mateo County at all times alleged in the complaint.  *Id.* ¶¶ 1, 4.

11        Dfinity USA hired Plaintiff as a senior research scientist in August 2017.  *Id.* ¶ 9.  She

12    worked on a project to develop a form of cryptocurrency known as "DFN tokens."  *Id.*  Her

13    compensation included a base salary and an opportunity to earn DFN tokens.  *Id.* ¶ 10.  Plaintiff

14    signed two agreements to this end: (1) an employment agreement with Dfinity USA; and (2) a

15    Restricted DFN Agreement with Dfinity Switzerland.  *Id.* ¶¶ 6, 20.

16        On May 10, 2021, Dfinity USA launched the ICP and listed the DFN tokens for sale to the

17    public in an initial coin offering through several cryptocurrency exchanges, including Coinbase.

18    *Id.* ¶ 14.  The tokens sold for approximately $580 shortly after.  *Id.*  Plaintiff emailed Dfinity USA

19    on May 11, 2021, requesting to transfer 300,000 of her tokens to Coinbase at the current price of

20    $495 per token.  *Id.* ¶ 15.  Dfinity USA confirmed that she had a vested total of 452,083 tokens

21    that were eligible to be distributed, but it did not transfer her any tokens at that time.  *Id.* ¶ 16.

22    After multiple requests, Williams called Plaintiff and offered to release only 40,000 tokens.  *Id.* ¶

23    18.  He allegedly refused to release the rest because he represented the batch would be worth more

24    than $6 million, and there was concern that the market would suffer if she sold all her tokens.  *Id.*

25    ¶¶ 17–18.  After she retained counsel, Dfinity USA slowly transferred all her tokens, but by the

26    time she received them, they were worth significantly less, as low as $39.  *Id.* ¶¶ 19–22.

27        Plaintiff now brings claims for breach of contract, breach of the implied covenant of good

28    Case No.: 5:25-cv-05503-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1    faith and fair dealing, conversion, and violation of the California Unfair Competition Law

2    ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.  Each Defendant filed a separate motion to

3    dismiss.

4    **II.    LEGAL STANDARD**

5    Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

6    specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

7    it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

8    complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

9    upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal of a claim under Rule

10    12(b)(6) may be based on a lack of a cognizable legal theory or the absence of sufficient facts

11    alleged under a cognizable legal theory.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097,

12    1104 (9th Cir. 2008); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

13    Moreover, the factual allegations "must be enough to raise a right to relief above the speculative

14    level" such that the claim "is plausible on its face." *Twombly*, 550 U.S. at 556–57.

15    At the motion to dismiss stage, the Court must read and construe the complaint in the light

16    most favorable to the non-moving party.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th

17    Cir. 2011).  The Court must accept as true all "well-pleaded factual allegations." *Ashcroft v.*

18    *Iqbal*, 556 U.S. 662, 664 (2009).  However, courts are not bound to accept as true a legal

19    conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555.  "In all cases, evaluating a

20    complaint's plausibility is a context-specific endeavor that requires courts to draw on . . . judicial

21    experience and common sense." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting

22    *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)) (internal quotation marks omitted).

23    If a motion to dismiss is granted, "a district court should grant leave to amend even if no

24    request to amend the pleading was made, unless it determines that the pleading could not possibly

25    be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)

26    (internal quotation marks omitted).

27

28    Case No.: 5:25-cv-05503-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
     3

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    DISCUSSION

The Court will begin with Williams's jurisdictional argument before turning to arguments regarding Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and violation of the UCL.

### A.    Personal Jurisdiction

Williams, a British national residing in Switzerland, argues the Court lacks personal jurisdiction over him because he does not reside in or have the required minimum contacts with California.  The Court finds otherwise.

The Ninth Circuit evaluates specific personal jurisdiction under a three-pronged test:

> (1) The non-resident defendant must purposefully direct[1] his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  A plaintiff bears the burden of satisfying the first two prongs.  *Id.*  If successful, the burden shifts to the defendant to "present a compelling case" that exercising jurisdiction would be unreasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).  But if a plaintiff fails to establish either of the first two prongs, "the jurisdictional inquiry ends and the case must be dismissed."  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

The Court begins with the first two prongs.  "Generally, the commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements of the minimum contacts test."  *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (internal quotation marks omitted) (cleaned up) (quoting *Paccar Int'l, Inc. v. Com. Bank of*

---

[1]Where the underlying claim sounds in tort, courts focus on purposeful direction.  *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021).

Case No.: 5:25-cv-05503-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
4

1    *Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)).  This derives from the well-established

2    principle "that the commission of a tort within the forum state usually supports the exercise of

3    personal jurisdiction."  *Id.* at 606; *see also Est. of Daher v. LSH Co.*, 575 F.Supp. 3d 1231, 1238

4    (C.D. Cal. 2021) ("[W]here a defendant enters the forum state and performs a tortious act there,

5    the act will satisfy the entire purposeful direction prong without need for further inquiry.").

6            Here, Plaintiff alleges that Williams resided in Santa Clara County "at all relevant times

7    described in th[e] complaint."  Compl. ¶ 5.  Williams does not dispute this.  Indeed, Williams

8    concedes that "he was present in California on a non-permanent basis prior to June 2021," after

9    which time he relocated to Switzerland.  Williams Mot. 5.  Given that this allegation is

10   undisputed, the Court must accept it as true.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108

11   (9th Cir. 2002) ("Although the plaintiff cannot 'simply rest on the bare allegations of its

12   complaint,' [citation omitted] uncontroverted allegations in the complaint must be taken as true.").

13   This simple undisputed fact that Williams was present in California at all times alleged in the

14   complaint, including when Plaintiff alleges he committed a tort and violated the UCL by refusing

15   to release her tokens, is sufficient to satisfy the first two prongs.

16           The Court finds Williams's arguments to the contrary unpersuasive.  Williams first argues

17   that his residency in California prior to June 2021 is "irrelevant" because it "has nothing to do

18   with Plaintiff's claims against Williams and cannot serve as the basis for specific jurisdiction."

19   Williams Mot. 14.  Not so.  Plaintiff alleges that Williams violated California law while in

20   California when he refused to release tokens belonging to Plaintiff, a California resident, in May

21   2021.  Williams also argues that his residence in California at the time of the alleged conduct is

22   "irrelevant" because "the relationship [to California] must arise out of contacts that the 'defendant

23   himself' creates."  Williams Mot. 11 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).  But

24   this principle is inapplicable.  Williams clearly created his relationship to California by choosing

25   to reside here during the time alleged in the complaint—the case law cited by Williams concerns

26   defendants who were not present in the forum state at the time of the conduct alleged.  *See, e.g.,*

27   *id.* ("It is undisputed that no part of petitioner's course of conduct occurred in Nevada."); *Overholt*

28   Case No.: 5:25-cv-05503-EJD

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

1    *v. Airista Flow Inc.*, No. 17CV1337-MMA (AGS), 2018 WL 355231, at \*13 (S.D. Cal. Jan. 10,

2    2018) ("Plaintiff does not allege Madigan traveled to California, met with Plaintiff in California,

3    or otherwise engaged in numerous communications with Plaintiff while Plaintiff worked for

4    Airista Flow in California. The only link between Madigan and California, as alleged, is that

5    Plaintiff resides in California and Plaintiff suffered harm in California."); *Est. of Daher*, 575 F.

6    Supp. 3d at 1238 ("The Estate, here, did not allege that LSH, itself, performed acts in California.

7    Rather, the Estate argued that actions taken by LSH's agents should be imputed to LSH."); *Axiom*

8    *Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) ("Acerchem UK itself

9    conducts no business in California").

10         Regarding the third prong, in determining whether the exercise of personal jurisdiction

11   over a nonresident defendant would be unreasonable and violate due process, courts are guided by

12   seven factors: "(1) the extent of the defendant's purposeful interjection into the forum state's

13   affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with

14   the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute;

15   (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the

16   plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

17   *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 984 (9th Cir. 2021) (citation omitted).

18         The Court finds these factors weigh in favor of exercising jurisdiction.  First, by allegedly

19   harming a California resident under California law while present in California, Williams

20   purposefully interjected himself into California's affairs.  Second, though Williams now resides in

21   Switzerland, he has not provided any reason why litigating this case would be more burdensome

22   on him than any other foreign resident.  Indeed, Williams shares local counsel with the other two

23   Defendants, and he may request virtual appearances where necessary.  Third, there are no facts to

24   suggest that litigating this case here would interfere with Swiss sovereignty.  Williams argues that

25   "adjudication of this dispute in California would interfere with the capacity of Swiss courts to

26   resolve disputes involving a Swiss entity, a Swiss contract governed by Swiss law, and a Swiss

27   resident," Williams Mot. 15; but Williams is not a Swiss entity, Plaintiff does not bring any

28   Case No.: 5:25-cv-05503-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1    contract claims against Williams, and the fact alone that Williams is a Swiss resident does not

2    render jurisdiction unreasonable.  Fourth, California has an interest in adjudicating California tort

3    claims committed within in the state.  Fifth, adjudicating this case here is the most efficient

4    judicial resolution of the controversy.  As discussed throughout this Order, all Defendants share

5    the same local counsel and raise similar, and at times identical, arguments for dismissal.  Sixth,

6    Williams offers no argument regarding the public's interest.  And finally, though an alternative

7    forum exists in Switzerland, all other factors weigh in favor of exercising jurisdiction.  The Court

8    therefore finds exercise of jurisdiction over Williams reasonable.

9          Accordingly, the Court finds it has personal jurisdiction over Williams.

10    **B.    Breach of Contract**

11          Moving to arguments regarding Plaintiff's claims, the Court begins with the first cause of

12    action for breach of contract.  Plaintiff brings this claim against Dfinity USA and Dfinity

13    Switzerland.  Dfinity Switzerland does seek dismissal of this count, but Dfinity USA argues that

14    Plaintiff's contract claim against it fails because, unlike Dfinity Switzerland, it was not a signatory

15    to the Restricted DFN Agreement.

16          It is undisputed that that Dfinity USA did not sign the Restricted DFN Agreement.  But

17    Plaintiff contends that her contract claim may nevertheless proceed against it under an alter ego

18    theory, arguing that Dfinity USA and Dfinity Switzerland are not actually separate entities.  "To

19    demonstrate that the parent [corporation] and subsidiary are 'not really separate entities' and

20    satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate

21    entities, the plaintiff must make out a prima facie case '(1) that there is such unity of interest and

22    ownership that the separate personalities [of the two entities] no longer exist; and (2) that failure to

23    disregard [their separate identities] would result in fraud or injustice.'" *Miller v. Int'l Bus.*

24    *Machines Corp.*, No. C02-2118 MJJ, 2006 WL 2792416, at *5 (N.D. Cal. Sept. 26, 2006) (quoting

25    *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

26          Here, Plaintiff tellingly relies on facts outside the complaint to argue that she sufficiently

27    pled alter ego, but the Court will not consider unpled and unincorporated facts for the purposes of

28    Case No.: 5:25-cv-05503-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1    a Rule 12(b)(6) motion.[2]  *See Douglas v. Kalanta*, No. 121CV01535JLTEPGPC, 2022 WL

2    16748728, at \*6 (E.D. Cal. Nov. 7, 2022), *report and recommendation adopted*, No.

3    121CV01535JLTEPG, 2022 WL 17834036 (E.D. Cal. Dec. 21, 2022), *aff'd*, No. 23-15104, 2024

4    WL 1795160 (9th Cir. Apr. 25, 2024) ("The Court agrees with Defendants that new allegations in

5    an opposition to a motion cannot be used to defeat dismissal and the only proper allegations for

6    the Court to consider are those contained in the complaint itself.") (citing *Schneider v. California*

7    *Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) ("In determining the propriety of a Rule

8    12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such

9    as a memorandum in opposition to a defendant's motion to dismiss.")).

10    Looking only to the facts pled, the Court finds them insufficient to show that Dfinity USA

11    is an alter ego of Dfinity Switzerland.  Plaintiff alleges that Dfinity USA and Dfinity Switzerland

12    share personnel—Williams is the President and Council Member of Dfinity Switzerland and the

13    Chief Executive Officer of Dfinity USA, and the entities are represented by the same legal

14    counsel—and that Dfinity USA and Dfinity Switzerland "share common marketing, accounting,

15    human resources, and other administrative resources."  Compl. ¶¶ 3–4.  But "[t]otal ownership and

16    shared management personnel are alone insufficient to establish the requisite level of control"

17    needed to show alter ego.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (examining

18    alter ego in jurisdictional context).  Plaintiff also fails to allege the facts that led her to believe

19    Dfinity USA and Dfinity Switzerland share other resources.  *See Kane v. Delong*, No. CV 13-

20    05021-KAW, 2014 WL 894587, at \*4 (N.D. Cal. Mar. 4, 2014).  Without more, these allegations

21    are insufficient; and Plaintiff appears to acknowledge as much, offering to amend the complaint to

22    plead the facts relied upon on her opposition that "do not appear in the Complaint."  Opp'n to

23    Dfinity USA Mot. 12.

24    Therefore, the Court **GRANTS** Dfinity USA's motion to dismiss the breach of contract

25

26

27    _____
[2] For these reasons, the Court denies Plaintiff's request for judicial notice of these facts.  *See* Req.
for J. Notice, ECF No. 34.

28    Case No.: 5:25-cv-05503-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1    claim as to Dfinity USA with leave to amend.[3] *See Lopez*, 203 F.3d at 1127 ("[A] district court

2    should grant leave to amend even if no request to amend the pleading was made, unless it

3    determines that the pleading could not possibly be cured by the allegation of other facts.")

4    (internal quotation marks omitted).

5    **C.    Implied Covenant**

6    Next, Plaintiff claims that Dfinity USA and Sfinity Switzerland breached the implied

7    covenant of good faith and fair dealing.  Both Defendants seek dismissal of this second claim for

8    the reasons outlined below.

9    **1.    Dfinity USA**

10    Dfinity USA contends that Plaintiff's implied covenant claim fails because, for the reasons

11    argued above, she has not plead any relevant contract underlying the breach.  The Court agrees.

12    "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing

13    is the existence of a contractual relationship between the parties, since the covenant is an implied

14    term in the contract." *Eurosemillas, S.A. v. PLC Diagnostics Inc.*, No. 17-CV-03159-TSH, 2019

15    WL 2088479, at *9 (N.D. Cal. May 13, 2019) (quoting *Smith v. City & Cnty. of San Francisco*,

16    225 Cal. App. 3d 38, 49 (1990)).  Because the Court finds that Plaintiff failed to sufficiently plead

17    a valid contract, her implied covenant claim is likewise deficient.

18    The Court therefore **GRANTS** Dfinity USA's motion to dismiss Plaintiff's implied

19    covenant claim against it with leave to amend.  *See Lopez*, 203 F.3d at 1127.  The Court need not

20    examine Dfinity USA's remaining arguments as to this claim.

21    **2.    Dfinity Switzerland**

22    Dfinity Switzerland challenges Plaintiff's breach of the implied covenant of good faith and

23    fair dealing claim as duplicative of her first breach of contract claim.  "Although a breach of

24    contract may also constitute a breach of the implied covenant of good faith and fair dealing, 'a

25    claim that merely realleges that breach as a violation of the covenant is superfluous'" and subject

26

27    _____
[3] The Court need not examine the Company's additional arguments regarding duplicative claims and the economic loss doctrine as applied to breach of the implied covenant.

28    Case No.: 5:25-cv-05503-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

9

United States District Court
Northern District of California

1    to dismissal.  *Yurgevich v. Hyundai Translead*, No. 10CV2622 JAH (JMA), 2011 WL 13356176,

2    at \*3 (S.D. Cal. Dec. 12, 2011) (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000)); *see*

3    *also Aljabban v. Fontana Indoor Swap Meet, Inc.*, 54 Cal. App. 5th 482, 509 (2020) ("[B]reach of

4    the implied covenant of good faith and fair dealing involves something beyond breach of the

5    contractual duty itself.") (internal quotation marks omitted)).

6           Plaintiff's two contract claims—breach of contract and breach of the implied covenant—

7    both arise out of Dfinity Switzerland's refusal to release her tokens.  But Plaintiff argues that the

8    implied covenant claim stands apart from the contract claim because the covenant implies a duty

9    to release the tokens *promptly*, which is not an explicit duty in the contract.  In other words, while

10   the breach of contract claim focuses on the complete failure to release the tokens in response to

11   her initial requests, the implied covenant claim focuses on the timeliness of the token release.

12          The Court finds this sufficient at this time.  Given that the Restricted DFN Agreement does

13   not contain any terms regarding the logistics or timing of releasing tokens in response to requests,

14   Plaintiff may proceed with a breach of the implied covenant claim to enforce the duty of good

15   faith and fair dealing implied in every contract.  *See Mitchell v. Exhibition Foods, Inc.*, 184 Cal.

16   App. 3d 1033 (Cal. Ct. App. 1986) (when a contract is ambiguous or silent on an issue, the

17   implied covenant of good faith and fair dealing can guide the interpretation and enforcement of the

18   agreement).  While it is true, as Dfinity Switzerland contends, that the implied covenant of good

19   faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond

20   those incorporated in the specific terms of their agreement," *Guz*, 24 Cal. 4th at 349–50, the

21   implied covenant can be used to claim that Dfinity Switzerland unfairly frustrated Plaintiff's right

22   to receive the full benefits of her tokens by purposefully releasing the tokens at a time when they

23   were of lower value.  *Avidity Partners, LLC v. State of California*, 221 Cal. App. 4th 1180, 1204,

24   165 Cal. Rptr. 3d 299, 320 (2013) ("In essence, the covenant is implied as a *supplement* to the

25   express contractual covenants, to prevent a contracting party from engaging in conduct which

26   (while not technically transgressing the express covenants) frustrates the other party's rights to the

27   benefits of the contract.") (internal quotation marks omitted) (emphasis in original).

28   Case No.: 5:25-cv-05503-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
     10

United States District Court
Northern District of California

1    The Court therefore **DENIES** Dfinity Switzerland's motion to dismiss Plaintiff's implied

2    covenant claim against it.

3    ### D.    Conversion

4    Plaintiff brings her third claim for conversion against all three Defendants, and Defendants

5    raise largely the same three arguments: (1) Plaintiff fails to allege facts specific to each Defendant;

6    (2) her conversion claim is duplicative of her contract claim; and (3) her claim is barred under the

7    economic loss doctrine.

8    ### 1.    Failure to Allege Sufficient Facts

9    "Conversion is the wrongful exercise of dominion over the property of another." *Mindys*

10   *Cosms., Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (internal quotation marks omitted).  The

11   elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the

12   property at the time of the conversion; (2) the defendant's conversion by a wrongful act or

13   disposition of property rights; and (3) damages.  *Id.*  The alleged converter must have assumed

14   control over the property or applied the property to his own use.  *Id.*  The acts include taking

15   possession of the property; preventing the plaintiff from accessing the property; destroying the

16   property; or refusing to return the property after the plaintiff demanded its return."  *In re Hoag*

17   *Urgent Care-Tustin, Inc.*, No. SACV 19-2485 MWF, 2021 WL 1164285, at \*4 (C.D. Cal. Mar.

18   26, 2021).

19   The Court will discuss in turn: (1) Dfinity USA and Williams's argument that Plaintiff

20   failed to allege they had control over her tokens; and (2) Dfinity Switzerland's argument that

21   Plaintiff's allegations impermissibly lump Defendants together.

22   ### a.    Dfinity USA and Williams

23   Dfinity USA and Williams both argue that Plaintiff failed to allege facts to show they had

24   the requisite control over her tokens.  The Court disagrees.

25   Plaintiff alleges the following relevant facts.  On May 11, 2021, Plaintiff sent an email to

26   Dfinity USA to request that it transfer 300,000 of her ICP tokens; and later that day, Dfinity

27   USA's director of legal operations confirmed that Plaintiff had a vested total of 452,083 tokens

28   Case No.: 5:25-cv-05503-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
11

United States District Court
Northern District of California

1    eligible for distribution.  But Dfinity USA did not transfer any tokens in response to her request.

2    Plaintiff then alleges she repeated this request on multiple occasions, until on May 17, 2021, when

3    Dfinity USA's head of finance contacted her to tell her that Williams, Dfinity USA's CEO,

4    wanted to discuss her token options with her.  On May 18, 2021, Williams offered to release

5    40,000 tokens but refused to release the rest, noting that the batch is worth more than $6 million.

6    Williams then proceeded to authorize distribution of various amounts of tokens on May 18 and

7    May 20, 2021.  Plaintiff continued to request her remaining tokens be distributed, but Dfinity USA

8    and Williams refused to comply out of concern that the market would tank.  After retaining

9    counsel and making additional requests, Dfinity USA distributed the remaining tokens in August

10   2021.  After resigning, Dfinity USA sent her a letter, on behalf of Dfinity Switzerland, indicating

11   that Dfinity USA will repurchase her unvested tokens.

12         The Court finds these facts are sufficient to allege that Dfinity USA and Williams had

13   control over Plaintiff's tokens.  Dfinity USA is correct that "one cannot refuse to return something

14   over which it had no possession or control."  Reply to Dfinity USA Mot. 7.  But at this stage, the

15   Court must accept as true all allegations and make all reasonable inferences in Plaintiff's favor.

16   Plaintiff alleges that Dfinity USA and Williams initially refused to release her tokens, and

17   subsequently released the tokens on a later date.  Accepting this as true, the reasonable inference is

18   that Dfinity USA and Williams had the possession or control required to release the tokens.

19                          **b.      Dfinity Switzerland**

20         Dfinity Switzerland does not argue that Plaintiff failed to allege facts to show it had

21   possession or control over her tokens.  Instead, Dfinity Switzerland contends that Plaintiff's

22   conversion claim improperly lumps together all Defendants without specifying what each

23   Defendant did to convert Plaintiff's property.  But Dfinity Switzerland provides no analysis to

24   accompany its position—instead merely citing two cases before summarily concluding that the

25   claim "must be dismissed for this reason alone."  Dfinity Switzerland Mot. 4.  Dfinity

26   Switzerland's failure to advance any argument on this point compels the Court's rejection of it.

27         The Court therefore rejects this first argument as to all Defendants and continues its

28   Case No.: 5:25-cv-05503-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
                                              12

United States District Court
Northern District of California

1    analysis of the remaining arguments regarding duplicativeness and the economic loss doctrine.

2                      **2.        Duplicative Claim**

3            Next, Dfinity USA and Dfinity Switzerland[4] argue that the conversion claim must fail

4    because it is duplicative of her contract claim.  "A plaintiff may not ordinarily recover for the tort

5    of conversion for the breach of duties that merely restate contractual obligations."  *Nguyen v.*

6    *Stephens Inst.*, 529 F. Supp. 3d 1047, 1058 (N.D. Cal. 2021) (internal quotation marks omitted).

7    "Conduct amounting to a breach of contract becomes tortious only when it also violates an

8    independent duty arising from principles of tort law."  *Applied Equip. Corp. v. Litton Saudi Arabia*

9    *Ltd.*, 7 Cal. 4th 503, 515 (1994); *see also Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) ("An

10   omission to perform a contract obligation is never a tort, unless that omission is also an omission

11   of a legal duty." (internal quotation marks omitted)).

12           As discussed above, the Court dismisses Plaintiff's contract claim against Dfinity USA for

13   failure to plead that Dfinity USA is a signatory.  Accordingly, Dfinity USA's argument that the

14   conversion claim is an impermissible duplicate of the contract claim is moot.  But regardless,

15   given the contract's enforceability issues as to Dfinity USA, Plaintiff may still be permitted to

16   plead conversion as an alternative theory for recovery.  *See* Fed. R. Civ. P. 8(d)(2).

17           As for Dfinity Switzerland, Plaintiff's breach of contract and conversion claims both allege

18   that Dfinity Switzerland failed to release her tokens in response to her requests—a duty contained

19   in the Restricted DFN Agreement.  Plaintiff argues that she should nevertheless be permitted to

20   plead both breach of contract and conversion because she seeks to recover different damages for

21   each claim.  But the question is whether Plaintiff's claim arises out of an *independent duty* owed

22   by Dfinity Switzerland separate from its contractual duty, not whether Plaintiff alleges separate

23   harms or seeks different recoveries.  *Nguyen*, 529 F. Supp. 3d at 1058 (finding unpersuasive

24   plaintiff's argument that his claims are not duplicative because the conversion claim is based on an

25   independent harm and seeks additional punitive damages).  Plaintiff has failed to proffer an

26

27   ────────────────────────
     [4] Williams does not join in this argument, presumably because Plaintiff does not bring contract
     claims against him.

28   Case No.: 5:25-cv-05503-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
     13

United States District Court
Northern District of California

1    independent duty underlying her conversion claim that is any different from Dfinity Switzerland's

2    duty under its contract. The Court therefore finds her conversion claim against Dfinity

3    Switzerland impermissibly duplicative of her contract claim.

4          Accordingly, though the Court rejects this second argument as to Dfinity USA, it finds that

5    Plaintiff's conversion claim against Dfinity Switzerland is duplicative of her contract claim. The

6    Court therefore **GRANTS** Dfinity Switzerland's motion to dismiss the conversion claim against it

7    with leave to amend. *See Lopez*, 203 F.3d at 1127. The Court need not examine Dfinity

8    Switzerland's remaining arguments on this claim, but the Court will continue with its discussion

9    of Dfinity USA and Williams's remaining arguments regarding the economic loss doctrine.

10          **3.    Economic Loss Doctrine**

11          Finally, Dfinity USA and Williams argue that the conversion claim is barred by the

12    economic loss doctrine for similar reasons to the section prior—the conversion claim is based on

13    the same facts alleged under the contract claims.

14          The economic loss rule generally provides that a plaintiff cannot bring a tort claim for

15    purely economic loss. "[T]he economic loss rule prevents the law of contract and the law of tort

16    from dissolving one into the other." *Mehta v. Robinhood Fin. LLC*, No. 21-CV-01013-SVK, 2021

17    WL 6882377, at *5 (N.D. Cal. May 6, 2021) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34

18    Cal. 4th 979, 988 (2004)). To this end, under California law, the economic loss doctrine bars tort

19    claims based on the same facts and damages as breach of contract claims. *Martinez v. Welk Grp.,*

20    *Inc.*, 907 F. Supp. 2d 1123, 1134 (S.D. Cal. 2012).

21          Regarding Williams, this argument fails because Plaintiff does not bring contract claims

22    against him—perhaps Williams recognizes this given that he drops this argument in his reply.

23          Regarding Dfinity USA, again as discussed above, the Court dismisses Plaintiff's contract

24    claim against it. If Dfinity USA's position is that it is not a signatory to any relevant contract with

25    Plaintiff, then there is no contract claim against it in which the conversion claim could possibly

26    dissolve. *See Mehta*, 2021 WL 6882377, at *5.

27          The Court therefore **DENIES** Dfinity USA and Williams's motions to dismiss Plaintiff's

28    Case No.: 5:25-cv-05503-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
14

United States District Court
Northern District of California

1    conversion claim against them.

2                                              * * *

3          Accordingly, the Court **GRANTS** Dfinity Switzerland's motion and **DENIES** Dfinity

4    USA and Williams's motions to dismiss Plaintiff's claim of conversion.

5          **E.    UCL Claim**

6          And finally, all Defendants urge the Court to dismiss Plaintiff's UCL claim because it is

7    not pled with the requisite particularly, among other arguments the Court need not reach.[5]

8          The UCL prohibits "unlawful," "unfair," and "fraudulent" business practices.  Cal. Bus. &

9    Prof. Code § 17200.  Each prong—unlawful, unfair, and fraudulent—is a separate claim.  *See Cel-*

10   *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  A cause of

11   action under the UCL must state with "reasonable particularity" the conduct that was allegedly

12   unlawful, unfair, or fraudulent.  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619

13   (1993).

14         Defendants argue in part that the complaint fatally fails to distinguish between these three

15   theories.  The Court agrees.  The complaint merely states that "[t]he defendants' actions constitute

16   unlawful, unfair and/or fraudulent business practices within the meaning of California Business &

17   Professions Code section 17200, et seq."  Compl. ¶ 41.  This is inadequate both because it does

18   not distinguish between the distinct theories of liability and does not identify facts specific to any

19   individual Defendant.  As such, the Court is unable to examine whether the complaint sufficiently

20

21   _____

22   [5] However, the Court briefly notes that Defendants' position regarding public harm is not
     supported by the language in the statute or relevant case law.  All Defendants argue, using
     identical language, that Plaintiff's UCL claim fails because she does not allege public harm, citing
23   to one case in support, *Pierry, Inc. v. Thirty-One Gifts*, LLC, No. 17-CV-03074-LB, 2018 WL
     1684409 (N.D. Cal. Apr. 5, 2018).  But *Pierry* involved a dispute between two business entities
24   and restated the general rule that, "where a UCL action is based on contracts not involving either
     the public in general or individual consumers who are parties to the contract, *a corporate plaintiff*
25   may not rely on the UCL for the relief it seeks."  *Linear Tech. Corp. v. Applied Materials,
     Inc.,* 152 Cal. App. 4th 115, 135 (2007) (emphasis added).  Plaintiff is not a corporate plaintiff,
26   and the Court has not been presented with any authority requiring public harm here.  *See Van
     Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1059 (9th Cir. 2017) (to gain standing for a
27   claim under the UCL, a plaintiff must allege only she suffered a loss or deprivation of money or
     property sufficient to qualify as an injury in fact as a result of an unfair business practice).
28   Case No.: 5:25-cv-05503-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1    states a claim under UCL theory.

2        The Court therefore **GRANTS** all Defendants' motions to dismiss the UCL claim with

3    leave to amend.  *See Lopez*, 203 F.3d at 1127.

4    **IV.    CONCLUSION**

5        Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART**

6    Defendants' motions to dismiss with leave to amend.  Should Plaintiff wish to file an amended

7    complaint, she must do so by January 23, 2026.

8        Given the substantially overlapping—and at times identical—arguments in Defendant's

9    three briefs authored by the same counsel, the Court **ORDERS** that any subsequent motion to

10    dismiss be filed as an omnibus brief.  The parties may submit to the Court any stipulations or

11    motions regarding a briefing schedule and page limitations if necessary.

12        **IT IS SO ORDERED.**

13    Dated: December 29, 2025

14

15

16        EDWARD J. DAVILA
        United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28    Case No.: 5:25-cv-05503-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
                            16

United States District Court
Northern District of California