UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MAHNUSH MOVAHEDI,
Plaintiff,

v.

DFINITY USA RESEARCH LLC, et al.,
Defendants.

Case No. 5:25-cv-05503-EJD

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 49

Plaintiff Mahnush Movahedi ("Plaintiff") brings various California state claims against Defendants Dfinity USA Research, LLC ("Dfinity USA"), Dfinity Stiftung ("Dfinity Switzerland" or "Foundation"), and Dominic Williams (collectively, "Defendants"), arising from allegations that Defendants failed to timely release her vested cryptocurrency. First Am. Compl. ("FAC"), ECF No. 45. Before the Court is Defendants' second motion to dismiss. Mot., ECF No. 49; Opp'n, ECF No. 53; Reply, ECF No. 55; *see also* Order Granting in Part and Den. in Part Mot. to Dismiss ("Prior Order"), ECF No. 44.

After careful review of the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons explained below, the Court **GRANTS** Defendants' motion to dismiss with leave to amend.

## I. BACKGROUND

Plaintiff is suing Defendants for their failure to release her vested cryptocurrency in a timely manner, which she alleges prevented her from selling her tokens before their value decreased substantially. *See* FAC. There are three Defendants: Dfinity USA, Dfinity Switzerland, and Williams. *Id.* ¶¶ 2–4. Dfinity USA is an LLC operating out of San Francisco that develops

network protocols and cryptography for the Internet Computer ("ICP"), which is a set of protocols for independent data centers to offer a decentralized Internet as an alternative to cloud services. *Id.* ¶¶ 3, 8. Dfinity USA has one sole member, Dfinity Switzerland. *Id.* ¶ 3. Dfinity Switzerland is a nonprofit organization based in Zurich, Switzerland with operations also in San Francisco. *Id.* Williams is the President and Council Member of Dfinity Switzerland and the Chief Executive Officer of Dfinity USA. *Id.* ¶ 4.

Dfinity USA hired Plaintiff as a senior research scientist in August 2017. *Id.* ¶ 9. Plaintiff worked on a project to develop a form of cryptocurrency known as "DFN tokens." *Id.* Her compensation included a base salary and an opportunity to earn DFN tokens. *Id.* ¶ 10. Plaintiff signed two agreements to this end: (1) an employment agreement with Dfinity USA; and (2) a Restricted DFN Agreement with Dfinity Switzerland. *Id.* ¶¶ 5(e), 10–14. On May 10, 2021, Dfinity USA launched the ICP and listed the DFN tokens for sale to the public in an initial coin offering. *Id.* ¶ 16. Plaintiff thereafter emailed Dfinity USA on May 11, 2021, requesting to transfer 300,000 of her tokens at the current price of $495 per token. *Id.* ¶ 16. Plaintiff alleges that Defendants intentionally delayed transferring all requested tokens until they dropped in value. *Id.* ¶¶ 16–24. Plaintiff now brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However,

courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678.

If the court concludes that a Rule 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

This is Defendants' second motion to dismiss. Defendants contend that Plaintiff again failed to allege facts sufficient to state claims for: (1) breach of contract, (2) conversion, and (3) violation of the UCL. The Court will discuss each in turn.

### A. Breach of Contract

In the first motion to dismiss, Dfinity USA argued that Plaintiff's breach of contract claim against it failed because Dfinity USA was not a signatory to the Restricted DFN Agreement, which provided the terms regarding her tokens. *See* Prior Order 8–9. The Court agreed. *Id.*

Plaintiff had argued that her claims should proceed under the alter ego doctrine, but the Court found this theory insufficiently pled. *Id.* As the Court previously stated, a plaintiff can "demonstrate that the parent [corporation] and subsidiary are not really separate entities and satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities" by alleging facts to show "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist; and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Miller v. Int'l Bus. Machines Corp.*, No. C02-2118 MJJ, 2006 WL 2792416, at *5 (N.D. Cal. Sept. 26, 2006) (internal quotations marks omitted) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)). The Court found Plaintiff failed to satisfy the first requirement—unity of interest. Specifically, the Court held:

> Looking only to the facts pled, the Court finds them insufficient to show that Dfinity USA is an alter ego of Dfinity Switzerland. Plaintiff alleges that Dfinity USA and Dfinity Switzerland share personnel—Williams is the President and Council Member of Dfinity Switzerland and the Chief Executive Officer of Dfinity USA, and the

> entities are represented by the same legal counsel—and that Dfinity USA and Dfinity Switzerland "share common marketing, accounting, human resources, and other administrative resources." Compl. ¶¶ 3–4. But "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control" needed to show alter ego. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (examining alter ego in jurisdictional context). Plaintiff also fails to allege the facts that led her to believe Dfinity USA and Dfinity Switzerland share other resources. *See Kane v. Delong*, No. CV 13-05021-KAW, 2014 WL 894587, at *4 (N.D. Cal. Mar. 4, 2014). Without more, these allegations are insufficient; and Plaintiff appears to acknowledge as much, offering to amend the complaint to plead the facts relied upon on her opposition that "do not appear in the Complaint." Opp'n to Dfinity USA Mot. 12.

*Id.* at 8.

The Court will examine in turn whether the FAC now alleges facts sufficient to show both: (1) a unity of interest, and (2) fraud or injustice.

**1. Unity of Interest**

First, the Court finds that Plaintiff's new allegations are sufficient to plead a unity of interest.

"To satisfy the unity of interest prong, the facts must show 'a unity of interest and ownership such that the separate personalities of the two entities no longer exist.'" *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 911 (N.D. Cal. 2023) (citing *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1138 (C.D. Cal. 2015)). "Factors for the trial court to consider include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1342 (2009) (citing *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538–39 (2000)). "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539.

The Court finds the FAC now contains facts that touch on several factors.[1] For example,

[1] Plaintiff also filed a request that the Court take judicial notice of several documents supporting these allegations, which Defendants oppose. Req. for J. Notice, ECF No. 54; Reply 2–3. The

there are allegations of commingling funds and assets, namely, allegations that Dfinity Foundation issued DFN tokens as Plaintiff's compensation for being an employee of Dfinity USA, FAC ¶ 5(e), and the two entities share an office in San Francisco, *id.* ¶ 5(c).[2]

There are also new facts detailing the entities' shared directors and officers. Plaintiff now alleges that: (1) "Defendant Williams holds the most senior positions in each entity, serving as the President and Council Member of Definity Foundation and as Chief Executive Officer of Dfinity USA"; (2) "Sanam Saaber, then the General Counsel of Dfinity USA, signed her February 10, 2020, letter to Ms. Movahedi on 'Dfinity' letterhead on behalf of the Dfinity Foundation, acting on behalf of both entities"; and (3) "[n]umerous current and former senior executives, including Chief Technology Officer Jan Camenisch, Vice President of Growth Lumesh Dutta, former General Counsel Jennifer Sum, and former Chief Operating Officer and Head of Strategic Projects Artia Moghbel, as well as defendant Williams himself, do not distinguish between Dfinity USA and the Dfinity Foundation when describing their own employment and affiliation; each simply identifies 'Dfinity' as his or her employer on their respective LinkedIn pages." *Id.* ¶ 5(b).

Further, Plaintiff newly alleges that the two entities share common outside professionals, including "the WilmerHale law firm, who acted as counsel for both defendants in connection with the Restricted DFN Agreement, and Bradford Newman, Esq., who is lead counsel for all defendants in the case at bar and in numerous other lawsuits." *Id.* ¶ 5(d).

And finally, there are new allegations that Defendants share labor and services, including: (1) "research and development," (2) "information technology service[s] related to the ICP network," (3) "servers, computers, data centers," and (4) "other resources in connection with the development, launch, and ongoing maintenance of the ICP network." *Id.* 5(e) (internal quotation marks omitted). Specifically as to Plaintiff's employment, there are also allegations that "[t]he Restricted DFN Agreement also gave both Dfinity USA and the Dfinity Foundation strong control

---

Court finds these additional documents unnecessary to its analysis. The Court accepts as true Plaintiff's allegations at this stage and need not consider evidence offered in support.

[2] While this alone is insufficient to show a unity of interest, additional facts provide the context necessary to survive the pleading stage. Accordingly, Plaintiff's request is denied as moot.

over Ms. Movahedi's employment, including the right to determine whether Cause for terminating her employment might exist, effectively giving both parties control over her compensation." *Id.*

These facts, when considered in combination, are sufficient to plead a unity of interest. For example, the court in *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 962 (N.D. Cal. 2015), found similar allegations plausibly pled a unity of interest—allegations that "all use the same EMI name; the foreign affiliates are wholly owned and/or controlled subsidiaries of that entity; EMI exercises total control over the foreign affiliates; Screen Gems–EMI and the affiliated sub-publishers pass funds (specifically, fees for sub-publishing) between and among themselves." And other courts have found pleadings alleging even fewer *Troyk* factors sufficient to satisfy Rule 12(b)(6). *See, e.g., Daewoo Elecs. Am. Inc. v. Opta Corp.*, No. C 13-1247 JSW, 2013 WL 3877596, at *5 (N.D. Cal. July 25, 2013) ("Daewoo pleads at least two factors in support of a unity of interest, including the contentions that "GoVideo was a mere instrumentality, agency, conduit, or adjunct of Opta and/or TCL Entities" and "Opta and/or TCL Entities directed and controlled GoVideo's dealings."); *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) (noting allegations of commingling of funds, dominion, and control); *Fed. Rsrv. Bank of San Francisco v. HK Sys.*, No. C-95-1190 MHP, 1997 WL 227955 (N.D. Cal. Apr. 24, 1997) (noting allegations of domination and control, disregard for the corporate form, and undercapitalization); *Axon Sols., Inc. v. San Diego Data Processing Corp.*, No. 09 CV 2543 JM RBB, 2010 WL 1797028, at *3 (S.D. Cal. May 4, 2010) (noting allegations of commingling of funds, undercapitalization, and representation by one entity that it is liable for the other's debts).

The Court finds Dfnity USA's arguments to the contrary unpersuasive. First, Dfnity USA relies on two distinguishable cases, *Integrity Med. Prod. Sols., LLC v. Seroclinix Corp.*, No. 22-CV-00785-BAS-BLM, 2024 WL 1914361, at *5 (S.D. Cal. May 1, 2024), and *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 782 (N.D. Cal. 2011). There, the courts rejected allegations that the defendants shared a unity of interest as "conclusory" and "general." The allegations here are far more detailed—Plaintiff identifies numerous shared directors and officers,

United States District Court
Northern District of California

provides examples of Defendants failing to distinguish between themselves, and alleges the type of assets and labor shared between the companies, among other allegations.

Second, Dfinity USA argues that alter ego liability here amounts to an impermissible form of reverse veil-piercing. But this argument misses the mark. "Outside reverse piercing occurs when a plaintiff that is not a shareholder (an outsider) seeks to reach the assets of a subsidiary based on a parent's liability." *He Nam You v. Japan*, 150 F. Supp. 3d 1140, 1149 (N.D. Cal. 2015). Here, Plaintiff does not attempt to reach Dfinity USA's assets based on Dfinity Switzerland's liability; she seeks an ultimate finding that Dfinity USA is liable for its own conduct constituting breach. Further, Dfinity USA's citation to cases regarding attempts to add a corporate subsidiary as a judgment debtor after obtaining a judgment against the corporate parent are inapposite. *See Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510 (2008) ("Outside reverse piercing, accomplished by the expedient means of a postjudgment motion, is an unacceptable shortcut to pursue those remedies."). Dfinity USA has failed to explain the relevance of judgment collection standards to examining pleadings under Rule 12(b)(6).

**2. Fraud or Injustice**

However, the Court agrees with Dfinity USA that Plaintiff failed to allege facts sufficient to satisfy the second requirement—that the failure to disregard Defendants' identities would result in fraud or injustice. *Miller*, 2006 WL 2792416, at *5.

To establish inequity in the absence of alter ego liability, a plaintiff must plead facts sufficient to demonstrate that "conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Stewart*, 81 F. Supp. 3d at 963 (citing *Sonora Diamond Corp.,* 83 Cal. App. 4th at 539). Allegations of fraud, specifically, must meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).

Here, Plaintiff alleges only that the "failure to disregard their separate identities would result in fraud and/or injustice." FAC ¶ 5. This allegation is conclusory, and it fails to identify the type of fraud or injustice at issue or explain how such fraud or injustice would occur. In her opposition, Plaintiff also argues that it would be inequitable and unjust to leave Plaintiff "without

recourse against her former employer in a suit seeking to recover value she earned through her employment." Opp'n 17. Setting aside the fact that this is not pled, the Court finds this suggestion implausible. Even if Plaintiff's contract claims against Dfinity USA fail, her claims against Dfinity Switzerland remain. Plaintiff addresses this notion in a footnote, arguing: "The fact that the Dfinity Foundation is before the Court as a defendant does not prevent the Court from finding that it would be inequitable to treat Dfinity USA as an alter ego" because the Foundation's location in Switzerland "significantly complicates the plaintiff's ability to conduct discovery and pursue collection in the event that she obtains a judgment." Opp'n 18 n.40. Again here, notwithstanding that this was not pled, such an allegation is insufficient. "Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." *Sonora*, 83 Cal. App. 4th at 539. And further, such an allegation is speculative. There is nothing in the FAC to suggest that judgment collection practices in Switzerland would facilitate fraud or cause any sort of injustice.

The Court therefore **GRANTS** Dfinity USA's motion to dismiss Plaintiff's contract claims against it.[3] Because the Prior Order did not reach issues of fraud or injustice, the Court will provide Plaintiff another opportunity to amend. *Lopez*, 203 F.3d at 1127 ("[The] court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

**B. Conversion**

Next, Dfinity Switzerland contends that the economic loss doctrine bars Plaintiff's conversion claim against it.

In the prior motion to dismiss, Dfinity Switzerland argued that Plaintiff's conversion claim was insufficiently pled, duplicative of her contract claim, and barred by the economic loss doctrine. Prior Order 13. The Court agreed with Dfinity Switzerland on one ground—

[3] This finding extends to Plaintiff's claims for breach of implied covenants. As the Court previous held, because "[t]he prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties," *Eurosemillas, S.A. v. PLC Diagnostics Inc.*, No. 17-CV-03159-TSH, 2019 WL 2088479, at *9 (N.D. Cal. May 13, 2019), the failure to plead a breach of contract claim dooms this claim as well. Contract claims against Dfinity Switzerland remain.

duplicativeness. *Id.* at 12–13. The Court found the claims impermissibly duplicative because they both alleged a breach of the duty imposed by the contract. *Id.* (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) ("Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law."). The Court granted leave to correct this deficiency, but it did not reach Dfinity Switzerland's arguments regarding the economic loss doctrine.

"The economic loss rule limits a party to a contract 'to recover[ing] in contract for purely economic loss due to disappointed expectations,' rather than in tort, 'unless he can demonstrate harm above and beyond a broken contractual promise.'" *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021), *certified question answered*, 17 Cal. 5th 1 (2024) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004)). This rule "prevents the law of contract and the law of tort from dissolving one into the other." *Mehta v. Robinhood Fin. LLC*, No. 21-CV-01013-SVK, 2021 WL 6882377, at *5 (N.D. Cal. May 6, 2021) (quoting *Robinson Helicopter*, 34 Cal. 4th at 988). To this end, under California law, the economic loss doctrine bars tort claims based on the same facts and damages as breach of contract claims. *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1134 (S.D. Cal. 2012).

Dfinity Switzerland argues the economic loss rule bars Plaintiff's conversion claim because it shares the same facts and damages as her contract claim. The Court agrees. Both claims rely on Plaintiff's allegations that: (1) she had a right to receive her tokens when she asked for them; (2) she did so and was refused; and (3) the tokens declined in value between the time she made her request and the time she received the tokens. *Compare* FAC ¶¶ 26–30, *with id.* ¶¶ 37–38. The FAC also does not distinguish between the harm caused by a breach of contract and the harm caused by conversion. The Court finds this overlap in both facts and injury sufficient to invoke the economic loss doctrine. Because the conversion claim is impermissibly intertwined with the contract claim, dismissal of the conversion claim is appropriate.

In response, Plaintiff focuses on the ways in which she cured the deficiencies regarding duplicativeness rather than meaningfully responding to the arguments regarding the economic loss

doctrine. Plaintiff highlights that her contract claim and conversion claim now rely on independent duties—the contract claim alleges Dfinity Switzerland breached its duties under the contract, and the conversion claim alleges Dfinity Switzerland breached its duty to refrain from "conduct designed to artificially inflate prices or distort market pricing mechanisms" under the UCL. Opp'n 21. But in its second motion to dismiss, Dfinity Switzerland no longer argues the claims are duplicative; it relies entirely on the economic loss rule.

Though the economic loss doctrine and bar against duplicative claims are both designed to separate contract law from tort law, they operate differently. The economic loss doctrine requires not only that Plaintiff allege independent duties, but also that Plaintiff allege independent harm. Specifically, Plaintiff must demonstrate both that: (1) "the defendant's injury-causing conduct violated a duty that is independent of the duties and rights assumed by the parties when they entered the contract," and (2) "the defendant's conduct must have caused injury to persons or property that was not reasonably contemplated by the parties when the contract was formed. *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 20–21 (2024); *see also Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*, 815 F. Supp. 3d 891, 899 (N.D. Cal. 2025) ("However, even assuming (without deciding) that they can clear the independent duty hurdle, Plaintiffs have not adequately pleaded that they were exposed to liability 'beyond the reasonable contemplation of the parties that might result from a breach when they entered into their contract.'"). The source of Defendant's obligations has little bearing on whether claims share the same injury. And Plaintiff cites no authority to support her argument that claims relying on the same facts and injury survive the economic loss rule merely because liability arises from independent duties.

The Court accordingly **GRANTS** Dfinity Switzerland's motion to dismiss the conversion claim against it. Because the Prior Order did not reach Dfinity Switzerland's arguments regarding the economic loss doctrine, the Court will provide Plaintiff another opportunity to amend. *Lopez*, 203 F.3d at 1127 ("[The] court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

United States District Court
Northern District of California

### C. UCL Claim

Finally, Defendants argue that Plaintiff's UCL claims must be dismissed because she fails to plead an inadequate remedy at law. The Court agrees. And, it appears, Plaintiff agrees as well. The UCL only provides equitable remedies, thus a UCL claim cannot survive unless Plaintiff alleges a threat of future injury or lack of an adequate remedy at law. *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1141–42 (9th Cir. 2025). "[C]ourts in this District have generally required that plaintiffs at least allege the lack of a remedy at law when asserting a UCL claim." *Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 990 (N.D. Cal. 2023) (collecting cases). Plaintiff concedes that "the First Amended Complaint does not currently plead that no adequate remedy at law exists," and requests "leave to amend to include the allegation." Opp'n 28. The Court accordingly **GRANTS** Defendants' motion to dismiss Plaintiff's UCL claims with leave to amend.[4]

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' partial motion to dismiss. If Plaintiff seeks to amend her complaint further, she may do so. Any amended complaint is due by **November 12, 2026**. Otherwise, the Court **ORDERS** the parties to file a joint statement by **November 12, 2026**, proposing a new date to hold an initial case management conference.

**IT IS SO ORDERED.**

Dated: October 22, 2026

Edward J. Davila
United States District Judge

[4] The Court need not address remaining UCL arguments at this time.